Our second case this morning is in re. Estate of Vernon Neal and that's case number 4140293 for the accomplice, Mr. Burton. Thank you, Your Honor. Thank you. Good morning. I would like to ask the court if it may please the court, but I'm afraid there are a couple items that won't please the court. One of which is my wife tells me my granddaughter brought home a virus from kindergarten and I'll be clearing my throat quite a lot. And the other thing is I don't do many, I don't go to court much, so I apologize in advance for the lack of polish. I'm here today representing... I'm sure you will do just fine. Thank you, Your Honor. I represent the current beneficiary of a certain testamentary trust which we ask the trial court in Coles County to construe. For the reason that the trustee did not think that my client was entitled to distributions of the unitrust amounts as the current beneficiary of Vernon Neal's testamentary trust. My client felt that she clearly was the intended beneficiary of that trust and that her father-in-law, Mr. Neal, intended that she receive the benefits of his specific request immediately upon his death. They transitioned from his death to her benefit as the current beneficiary of a testamentary trust. She retained me. I told her, yes, that was very much in compliance with probate law, both the Principal and Income Act and the Trust and Trustees Act. So, Mr. Neal, who was an extremely successful gentleman and left an estate with a net worth of over $25 million despite the fact that he had been a very generous person during his lifetime and the reception center at Eastern Illinois is the Neal Reception Center. So, he was a gentleman who had very great success during his lifetime. He only had one child, an adopted son of his deceased wife who had been married to my client. That adopted son chose to become a daughter and as a consequence of that, Mr. Neal revised his will and the testamentary trusts that were established under that will. He did so by signing a codicil. That's the language that's at issue and that's the language we asked the court to construe. That codicil revoked and replaced a traditional testamentary trust to be funded under the will for the benefit of my client. He was going to put $3 million in that testamentary trust at his death for her benefit. In the course of doing the codicil, which took away certain benefits that would have been to the benefit of his former son, Jeffrey, and current daughter, Melissa, he changed the nature of the testamentary trust in which my client was the current beneficiary. So, instead of a $3 million specific request into trust for my client's benefit, he chose to put $2.4 million into the testamentary trust for my client's immediate benefit. As he says in section F, in article 9, paragraph F of his codicil, it was payable upon his death. I did interrupt you during your presentation. I want to make sure that we get to the meat of the case here, and that is whether or not the interest amount that you're getting to in terms of the codicil was due at the time of death or at a later time. And is it agreed here between you and Mr. Blow that the Principle of Income Act, section 5A of the Principle of Income Act, applies to guide the court here in making that determination? Section 5A of the Principle of Income Act. When the right to income commences, you have that indicated in the sub-statute involved at page 2 of your brief. And you indicate, you agree, that it's that portion of section 5A discussing the date of death that determines the time frame or the triggering event for the payment of the interest amount here. I do not believe that Mr. Blow nor his client, the trustee, agreed that it was to be paid effective upon the death. Correct. But they point to the immediately preceding sentence in section 5A and indicate that there is an event, as indicated in the statutory language, that would be the triggering point in time. I'm just wanting to find out, are both you and Mr. Blow, the parties here, in agreement that section 5A of the Principle of Income Act should guide this court's decision? I believe that's true, Your Honor. I think they feel that the funding of the trust is the event. And, of course, I feel, and I think that section A that you mentioned says clearly that the event is the death of the testator. Unless otherwise specified. Right. Which, in this case, is the cause. Right. So we need to look at that. They go to Article 9, Section F, and their position is that until there is full funding, my client has no right to the unit trust amounts. I think the very plain language of that paragraph says otherwise. In addition to the unit trust amount, and then it mentioned other aspects of an estate accounting, net accounting income in my estate, or other assets payable to the trust. He might have had a payable on death account that went into this trust. Again, he didn't have that. He's covering all the bases. And then he says, but prior to full funding of the trust, after my death, that's the event. After my death, it shall be paid to the estate. Well, the estate, of course, is not a beneficiary of a testamentary trust. So that only says, step one, during the administration of the estate, and prior to the funding of the testamentary trust, it stays in the estate, pending, it shall be paid to my estate. And that foregoing income distribution recognizes that until full funding of the TRU, the trust for my client, assets awaiting distribution to the TRU will not be taken into account in determining the unit trust amount. He's just stating that we don't want to further complicate the calculation of how a unit trust amount is determined. Prior to the full funding, my client is entitled to 5% of the original specific bequest, $2.4 million, $120,000 a year, a very generous gift into this subparagraph F. Well, subparagraph F, you're talking about a scenario where there's partial funding. We don't have a partial funding scenario here, correct? We go from zero funding to full funding in one payment. Right. So in subparagraph F of Article 9, how would you determine a unit trust amount if there are zero assets awaiting distribution to the TRU? The unit trust amount, or the unit trust is a testamentary trust, is to be funded upon the death of the testator, the death of the trustor. It becomes effective immediately. This is step one. Inevitably, when we have a testamentary trust, there is going to be a period of time when the assets that go to fund the specific bequest, the $2.4 million, are selected, they're administered, and then they go into the trust. Prior to that time, these are assets payable to this trust after my death. So they're accruing for the benefit of the named beneficiaries of the trust. They're payable to the trust after my death. And it's just a question of time when step two takes place, the trustee recognizing, oh, this is a distribution of a unit trust amount. The language of the trust is clear. That is to be distributed to the current beneficiary, my client. So this is that. It's a two-step process. We know there's going to be an estate administration period of time. During that time, it's paid to the estate so we don't get into any confusion about how we calculate the unit trust amount distributions, which are to be averaged. So until full funding, we always premise it on the amount of the specific bequest, $2.4. I'm not sure how this helps you, and maybe you can clarify, but paragraph F, as I read it, deals with a partial funding scenario. And in that partial funding scenario, the unit trust amount is to be paid to the estate. So how does that help your client find it? Well, because the estate is not a beneficiary of the trust. The question is, when it is created and designated as a unit trust amount, where does it go? Oh, it goes into the trust when we do the full funding. And who is entitled to it? Oh, the unit trust amount beneficiary, the current beneficiary, my client. This is just like income. And I hate to say it, I didn't cite, because I saw this purely as a trust problem, but it is also an estate issue. And I failed to cite the Trusts and Trustees Act, Principle of Interest Act 15.6, administration of a decedent's estate. It talks about how expenses get allocated, and it says in subparagraph B, after the death of a decedent and before distribution, income from an expenses incurred in connection shall be allocated as follows. And subparagraph 1 says, to specific legatees, the income from the property bequeathed to them. The Total Return Trust Act says unit trust amounts are substituted for the language income. So when this provision about the administration of the decedent's estate says income is paid to the beneficiary of a specific bequest, that is not contrary to any provision of the Total Return Trust Act that says income or unit trust amounts from that specific bequest are to be paid to the legatee. So it's to be paid to the trust, and the trust says it's a unit trust amount, it's to be paid to my client. You're speaking still to Paragraph F of the House, and that's been addressed here. Paragraph D constitutes the funding calculation provision of the House, right? How does Paragraph D support your theory of the case here? Well, and I should premise my statement by saying one of the reasons I went to law school was because I did not like math, and therefore much of this language is somewhat foreign to me. But the unit trust amount, again, we have a very specific statement of the mathematical formula by which a unit trust amount will be determined. And, of course, it's designed to pay 5% of whatever the value of the trust was in two years prior in the current year. And, of course, until there's full funding, we don't have any prior years. So that language is all designed to assure that this calculation is made very specifically and will comply with the Internal Revenue Code provision 663 that is very, very specific on qualifying a unit trust that is a charitable remainder unit trust for the charitable deduction, which is critical to this estate. Well, here the unit trust funding was accomplished on December 2nd of 2013 with a single payment of $2.49 million. According to Paragraph B of Article 9, if you read that then to take into account the date of funding, wouldn't it read, the unit trust amount for the trust shall be equal to the average of the fair market values as of the date of first funding in the first trust year, which would be December 2nd, 2013, which would provide support for Mr. Blunt's argument here as opposed to your argument that it should be as of date of debt. Because otherwise, if it says as of date of debt, how can you read Paragraph B to establish the unit trust amount? Well, Paragraph B tells us how we establish it, and it's supposed to be an average. But until there is that full funding, we don't want any variation from the fact that the unit trust amount will be determined solely by the amount of the specific bequest. You said until full funding. This says date of first funding. Just as it happens today, in this case, date of first funding and date of full funding are both incurred on December 2nd. Right. And I think perhaps first funding is just the equivalent of full funding. Are the date of first funding in the first trust year? I can't say anything other than perhaps that is, what do we say, boilerplate language that they took out of an ICLE book that says, this is language we want to use for unit trust, and many unit trusts may, in fact, be immediately funded. They may be living trusts. I think that's just to address the issue of how it gets averaged. Mr. Murphy, you are out of time, but you will have your model. Okay. Sorry. Thank you. We have the light system that goes yellow. That means you're getting close that time. If it goes red, it means that's gas. In the Fifth District, when I'm starting to do that, they hit me with the hammer. Thank you, Judge. We don't use hammers either, so much more civilized here. May it please the Court, Mr. Murphy. My response is that every statute that's mentioned, the Principal Income Act, the Wills Act, the Trust Act, all provide what the law is, and then it says, unless it's contradicted by the language in the instrument, and this is what we have here, and his original will not only created the same kind of trust with $3 million, but also said it began on his death. The income began on his death. This does not say that, which means that's a very conscious change in what he wanted in his will when he made his first council. So I can't really, the law in Illinois is that you must take the meaning of a trust instrument and give it its usual, ordinary meaning. That's what we've done here. It doesn't matter what that does with the unit trust. We're not done. The fact of the matter is he put that 9D in there about the estate would get the money from the trust assets until the first funding. I don't see anything anywhere that contradicts that, and I don't feel any legal authority cited in counsel's brief contradicts that. So my position is very clear, very basic. The trial judge says this is what it says, this is what I'm going to do, and that's it. So it makes no sense for me to sit here for a half hour going over and over and over. That's my position, and that's where I'm at. The aircraft deck is $20 million. Absolutely, absolutely. And the fact that he, his original will, and I've got them both there in my hand. His original will created the same trust, gave $3 million instead of $2.4 million, and said that it would begin immediately on his death. But when he changed that, he took that out immediately on his death and said they wouldn't get the money until it was fully funded. It's just A, B, C. And as for myself, I would love to get to grow the income, but we can't do that because the legal instruments don't permit us to do that. So that's all I can, that's my whole pitch, and I can't really add much to that. I see no questions. Thank you, sir. Mr. Berkey, do you have a vote? Thank you, gentlemen. Again, I think it would be very helpful to look at a very similar case that this court ruled on, that speaks to the clear law which says that what's critical is the intent of the author of the document in question. And this is a very clear evidence of the intent that Vernon Neal was going to provide a benefit to his daughter-in-law immediately upon his death. Well, how about Mr. Loeb's argument that the will that he amended with his codicil changed the language from funding at death to funding upon what is full funding? Exactly. What happened, of course, in that codicil is that the language that the court looked at in making the ruling that the unitrust amount was to, quote, remain in the estate was revoked. It was a no. That's what Black's dictionary said. I had to look up revoke. Does this mean something that I don't understand? No. It annuls that language. That language has no legal purpose on the question of what is his intent now. His intent is to benefit his daughter-in-law on his death, pay to or for the benefit of Cindy Neal Lunsford during her life. Paragraph F, unitrust amount as determined above. That's what paragraphs B, C, D, that horrific language of mathematics, define. But in addition to the unitrust amount determined above payable to this trust after my death, what could be a more clear statement of intent, absolutely unambiguous? It shall be paid to my estate. The estate is payable to the trust, but in the interim it gets paid to my estate. The estate is not a beneficiary of that trust. It would not be a charitable remainder trust if an estate was a beneficiary, and an estate exists to ultimately be distributed to the legatees. So in addition to the unitrust, payable to the trust, unitrust amount payable to the trust in F, these are assets awaiting distribution to the TRU. Then he goes on in paragraph H. Why did he set up a total return unitrust? Is there any question? No, there's no question, but he can't help himself. I have created this total return unitrust for Cindy in order to allow the trust to be invested for total return without the artificial distinction between accounting income and principal appreciation. Unfortunately, because it was a charitable remainder unitrust, he couldn't do away with the artificial mathematical calculations of unitrust amounts in the initial years when there were no prior years to average to create that. So then he has to say clearly in F, until the full funding, we use the specific bequest as the determining value for calculation of the unitrust amount. Again, I might not have gone to law school if I'd known there were mathematical issues this messy that would occlude legal issues. This is a legal issue. Who's entitled to that unitrust amount that is payable to this trust after my death? Very clearly. And it's a full-corner rule. As this Court said in Peck, we don't have to look beyond the language of the codicil to know the very clear intent to benefit Cindy Munsford Neal immediately upon the death of the trustor testator. Thank you, counsel. I think I've gotten it. Yes, you have. Thank you very much. You are.